UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                     :

ELENA GLOTSER,                           :

                               :

                Plaintiff,       :

                               :            20 Civ. 2654 (JPC) (SLC)

          -v-                    :

                               :             OPINION AND
                               :               ORDER

BOARDWALK REGENCY LLC,        :

                               :

               Defendant.     :

                               :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiff Elena Glotser has been traveling to Defendant Boardwalk Regency LLC's hotel and casino in Atlantic City, New Jersey for over eighteen years. She was so loyal a customer that she obtained priority status, which resulted in her receipt of a complimentary suite upon her arrival at the hotel on June 12, 2018. Her luck, unfortunately, ran out shortly after midnight, when she tripped and fell in that suite while wearing a pair of hotel-provided slippers. She now sues Defendant for negligence. Defendant has moved both for summary judgment and to transfer venue to the District of New Jersey, the district where the injury occurred. For the reasons discussed, the motion to transfer is granted, and the motion for summary judgment is denied without prejudice to Defendant renewing the motion in the District of New Jersey.

## I.  Background

### A.    Facts[1]

Plaintiff is a resident of New York and a seasoned patron of Caesars Atlantic City, a hotel and casino in Atlantic City, New Jersey, owned and operated by Defendant.  Deft. 56.1 Stmt. ¶¶ 13-16; *accord* First Am. Compl. ¶¶ 8-21.  Plaintiff has been traveling to New Jersey to "stay[] at Caesars for the past eighteen or twenty years."  Deft. 56.1 Stmt. ¶ 14.  She has even obtained "Seven Star Club" membership, which is earned when someone gambles a large amount of money in one year.  *See id.*; Pl. 56.1 Stmt. ¶ 16; Dkt. 71 ("Motion") at 5-6.[2]  As a Seven Star Club member,

---

[1] These facts are mainly drawn from the allegations in the First Amended Complaint, Dkt. 31 ("First Am. Compl."), and the facts that the parties do not dispute, as reflected in Defendant's statement of undisputed material facts under Local Civil Rule 56.1, Dkt. 59 ("Deft. 56.1 Stmt."), annexed to its motion for summary judgment, Dkts. 56-59.  Unless otherwise noted, the Court cites only to Defendant's statement of undisputed material facts when Plaintiff affirmatively admits the fact in her responsive statement pursuant to Rule 56.1, Dkt. 64 ("Pl. 56.1 Stmt.").  While the Court does not reach the merits of Defendant's motion for summary judgment given its transfer holding, certain facts agreed to by the parties are relevant to the Court's resolution of Defendant's motion to transfer.

[2] The parties' submissions are inconsistent as to whether Seven Star status requires someone to gamble $150,000 or $750,000 in a year.  Paragraph 16 of Defendant's Rule 56.1 statement contends, among other things, that "Seven Star membership is a tier that players earn when they reach 150,000 tier points in a given year."  Deft. 56.1 Stmt. ¶ 16.  In support, Defendant cites deposition testimony from its employee, Melbourne Pimenta, in which Pimenta explained that a player "need[s] $5 recycled [in slot machine play] for one point."  Dkt. 57-7 at 9:9-13.  So this would suggest that $750,000 must be gambled in slot machines to attain Seven Star membership.  Yet later in his deposition, Pimenta explained the tier status as follows: "You start off with gold which is 0 to 5,000 points in a year, once you get 5,001 you move to platinum which is up to 15,000 and then 15,001 gives you diamond status and then *$150,000* gives you Seven Star."  *Id.* at 14:19-24 (emphasis added).  Perhaps Pimenta misspoke when he said "$150,000" instead of "150,000 points."  But then, in Plaintiff's statement in response to Defendant's Rule 56.1 statement, she admits the contentions in Paragraph 16, but "with the caveat that Seven Star membership is earned when gamblers gamble $150,000.00 or more and that each dollar is 5 points."  Pl. 56.1 Stmt. ¶ 16.  But Plaintiff cites to the aforementioned excerpts from Pimenta's deposition in which he testified that $5 dollars equates to one point, and also that "$150,000 gives you Seven Star."  While it appears that a player must gamble $750,000, not $150,000, to attain Seven Star status, it is not necessary to resolve this issue as, either way, it is clear that Plaintiff has gambled a sizable amount of money at Defendant's casino.

Plaintiff is entitled to various perks including, among other things, priority check-in upon arrival and an annual free trip to a Caesars destination.  Deft. 56.1 Stmt. ¶ 16.

On June 12, 2018, Plaintiff checked into the hotel at Caesars Atlantic City and, by virtue of her Seven Star status, received a complimentary suite in the hotel's Ocean Tower.  *Id.* ¶¶ 16-17.  After unpacking some of her belongings in the room, she proceeded to the hotel's casino area to gamble at the slot machines and eat.  *Id.* ¶ 18.  Around 12:00 a.m., Plaintiff left the gambling hall and returned to her Ocean Tower suite, where she decided to change into a bathrobe and slippers.  *Id.* ¶ 19.  Because she forgot to pack her own slippers, Plaintiff put on a complimentary pair that was in the suite.  *Id.* ¶¶ 19-20.

Wearing those slippers, Plaintiff walked towards the bathroom.  *Id.* ¶ 22.  As she "reached the entrance of the bathroom, she tripped and fell onto the bathroom floor," hitting her left arm and knee.  *Id.* ¶ 23.  Plaintiff claims that she tripped because the slippers were too large for her feet and so she was unable to feel the threshold separating the bedroom and the bathroom.  *Id.* ¶¶ 24-25.  Moments later, Plaintiff got up and went to bed.  *Id.* ¶ 26.  The next morning, she told her casino host, Pimenta, about the incident.  *Id.* ¶ 32.  Pimenta reported the incident to security, and then accompanied an officer to Plaintiff's suite to meet with her.  *Id.* ¶ 33.  Shortly thereafter, Pimenta escorted Plaintiff from the hotel to a hospital located one block away.  *Id.* ¶ 34.  After receiving medical treatment, Pimenta escorted Plaintiff back to her hotel suite.  *Id.*  Plaintiff packed her belongings and returned to New York in a limousine provided by Caesars Atlantic City later that day.  *Id.*

## B.   Procedural History

On February 27, 2020, Plaintiff filed a complaint in New York Supreme Court, New York County, naming Caesars Atlantic City Hotel and Casino and Caesars Entertainment Corporation

as defendants.  Dkt. 70-1; *see* Deft. 56.1 Stmt. ¶ 3.  She alleged that that those defendants were liable for "negligence, carelessness and recklessness" by failing to maintain a safe premises, failing to provide Plaintiff with slippers that were the correct size or safe to use, and failing warn Plaintiff about the potential danger that the slippers could cause.  Dkt. 70-1 ¶ 40.  On March 30, 2020, those defendants removed this action to the Southern District of New York, and the case was assigned to the Honorable Paul G. Gardephe.  Dkt 1; *accord* Mar. 31, 2020 Case Opening Initial Assignment Notice.  Judge Gardephe referred the case to the Honorable Sarah L. Cave, United States Magistrate Judge, for general pretrial supervision.  Dkt. 6.  Defendants answered the complaint on April 6, 2020.  Dkt. 9.  The case was reassigned to the undersigned on September 29, 2020.  *See* Sept. 29, 2020 Notice of Reassignment.

On February 9, 2021, the parties filed a stipulation agreeing to substitute Boardwalk Regency LLC as the sole defendant in this matter, Dkt. 29, and Judge Cave approved the stipulation the following day, Dkt. 30.  Plaintiff filed the First Amended Complaint against Boardwalk Regency LLC on February 11, 2021.  Defendant answered the First Amended Complaint on July 13, 2021.  Dkt. 37.  Following the close of discovery, Defendant filed its opening summary judgment brief and supporting documentation on March 8, 2022, Dkts. 56-59, Plaintiff filed her opposing papers on April 18 and 19, 2022, Dkts. 62-66, and Defendant replied on May 3, 2022, Dkt. 67.

On January 31, 2022, prior to the parties' summary judgment briefing, the Court had held a conference to discuss whether federal diversity jurisdiction exists over this dispute and whether venue is proper in the Southern District of New York.  Dkt. 54; *see also* Dkt. 75.  Defendant later moved to transfer venue to the District of New Jersey on January 9, 2023, Dkts. 69-71; Plaintiff

filed an opposition brief on January 28, 2023, Dkt. 72 ("Opposition"); and Defendant replied on February 7, 2023, Dkt. 74 ("Reply").

## II.  Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." [3]  28 U.S.C. § 1404(a); *see also W.P.V. v. United States*, No. 21 Civ. 4436 (JPC), 2023 WL 1991426, at *3 (S.D.N.Y. Feb. 14, 2023).  "Courts apply a two-part test to determine whether to grant a motion to transfer venue."  *W.P.V.*, 2023 WL 1991426, at *3.  First, as a threshold inquiry, the court must decide whether "the transferee district" is "one where jurisdiction over the defendant could have been obtained at the time suit was brought, regardless of defendant's consent."  *Sentegra, LLC v. ASUS Computer Int'l*, No. 15 Civ. 3768 (GHW), 2016 WL 3093988, at *2 (S.D.N.Y. June 1, 2016).

Once that requirement is established, courts turn to the question of "whether transfer is appropriate."  *Burgos v. United States*, No. 16 Civ. 7091 (RA), 2017 WL 2799172, at *2 (S.D.N.Y. June 27, 2017) (quoting *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 616 (S.D.N.Y. 2016)).  The inquiry considers whether the transfer is "in the interest of justice and convenience of the parties and witnesses," with courts often guided by nine factors:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the

---

[3] This statute applies even where, as here, the original action was removed from state court. *See PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir. 1998) (noting that while "one may not challenge venue in the district court as of right" if the action was properly removed to the district "embracing the state court in which the action was brought," the "party may nonetheless request a discretionary transfer to a more convenient district court forum under the transfer provision" (internal quotation marks omitted)).

forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Sentegra, LLC*, 2016 WL 3093988, at *2 (citations omitted).  The moving party must demonstrate that these factors militate toward transfer by clear and convincing evidence.  *See N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010); *see also W.P.V.*, 2023 WL 1991426, at *3.

### III.  Discussion

The parties agree that the first prong of the section 1404(a) analysis—whether the suit could have been brought in the transferee district—is satisfied.  *See* Motion at 2; Opposition at 3 (admitting that "Plaintiff could have brought this suit in the State of New Jersey").  Thus, the Court turns to analyzing the nine factors guiding the second prong: "whether transfer is appropriate." *Burgos*, 2017 WL 2799172, at *2.

### A.   Convenience of the Witnesses

"The convenience of both party and nonparty witnesses is probably considered the single most important factor in the analysis of whether a transfer should be granted."  *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000) (internal quotation marks omitted). "Because the 'core' inquiry under § 1404(a) is where the 'center of gravity of the litigation' is located, courts 'routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district.'"  *Ruiz ex rel. E.R. v. United States*, No. 13 Civ. 1241 (KAM) (SMG), 2014 WL 4662241, at *11 (E.D.N.Y. Sept. 18, 2014) (quoting *Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991)).  "When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district."  *Freeplay Music, LLC*, 195 F. Supp. 3d at 617 (internal quotation marks omitted).  Importantly, "[t]he convenience of non-party

6

witnesses is accorded more weight than that of party witnesses." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005).

Here, the primary witnesses at trial will both be party witnesses. "Plaintiff will testify on her own behalf" and appears to be the only eyewitness to the actual slip and fall. Opposition at 6; *accord* Deft. 56.1 Stmt. ¶¶ 21-26. Pimenta, Defendant's employee, is expected to testify for Defendant as to his interaction with Plaintiff "before and after the incident," "the condition of slippers, past guests [*sic*] experiences with the subject slippers, . . . the lack of previous incidents regarding the slippers[,] and the location of Plaintiff's incident." Reply at 2. But the Court does not accord the convenience of these witnesses much weight in its analysis since they are both party witnesses, *see Indian Harbor*, 419 F. Supp. 2d at 402, and even if it did, they would balance each other out since Plaintiff resides in New York and Pimenta resides and works in New Jersey. Deft. 56.1 Stmt. ¶ 13; Reply at 2.

None of the other witnesses to which the parties point sufficiently tips the scale one way or the other. Defendant, for example, notes that Plaintiff received initial care at a hospital in Atlantic City, and so "[a]ny testimony regarding the initial impressions of Plaintiff's injury and necessary medical treatment will come from witnesses located in New Jersey," presumably at that hospital. Reply at 2. "However, the Second Circuit has stated that a party seeking to rely on the convenience of witnesses factor must clearly specify the key witnesses to be called," and here, "defendant has not identified by name or title any of the potential witnesses" from the Atlantic City hospital. *Scherillo v. Dun & Bradstreet, Inc.*, 684 F. Supp. 2d 313, 326 (E.D.N.Y. 2010) (internal quotation marks omitted); *see also W.P.V.*, 2023 WL 1991426, at *4 ("Plaintiffs have not pointed to any specific individuals [located in New York] that they expect to be witnesses" other

than generally asserting that "witnesses are located . . . in New York who can speak to the circumstances surrounding" the claims. (alterations omitted)).

Plaintiff expects to call her son, Anton Glotser, to testify as to her "post-accident" condition.  Opposition at 6.  But the Court finds that Mr. Glotser's convenience is not a significant consideration since (1) he is a close relative of Plaintiff, and therefore practically a party witness, and (2) Plaintiff admits that "he was not present when the accident occurred," Opposition at 6; *see Browne v. Marriott Int'l Hotels, Inc.*, No. 07 Civ. 2228 (NGG) (RER), 2007 WL 9723361, at *3 (E.D.N.Y. Nov. 8, 2007) (according little weight to the location of witnesses unable to provide eyewitness testimony).  Similarly, while Plaintiff points to several treating physicians who might testify on her behalf, and asserts that each is located in New York, "[i]t has been repeatedly held by courts that the convenience of expert witnesses is of little or no significance on a motion to transfer," *Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 693 (S.D.N.Y. 1994) (internal quotation marks omitted), especially where, as here, Plaintiff "has not indicated what hardships might arise from having these doctors testify [remotely]," *Schwartz v. Marriott Hotel Servs., Inc.*, 186 F. Supp. 2d 245, 249 (E.D.N.Y. 2002).  *See also Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, No. 99 Civ. 10713 (MBM), 2001 WL 277295, at *2 (S.D.N.Y. Mar. 21, 2001) ("[E]ven if defendant were correct that the 'critical testimony' will come from experts, that conclusion would not favor transfer because . . . the convenience of expert witnesses is given little or no weight.").

Accordingly, this factor is neutral.

B.     **Convenience of the Parties**

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer."  *Flood v. Carlson Rests. Inc.*, 94 F. Supp. 3d 572, 578 (S.D.N.Y. 2015) (internal quotation marks omitted).

As discussed below, *see infra* III.D, the claims primarily involve alleged acts or omissions caused by and occurring at Defendant's hotel—Caesars Atlantic City—located in New Jersey.  It would therefore be more convenient for Defendant to litigate in the District of New Jersey, as the district where the alleged tortious conduct occurred and the district in closer proximity to where its witnesses are located.   Reply at 2-3; *see W.P.V.*, 2023 WL 1991426, at \*5.  On the other hand, it would obviously be more convenient for Plaintiff to litigate in the Southern District of New York, which is the district of her residence.

Ordinarily, "[t]he parties' convenience becomes a neutral factor in the transfer analysis if transferring venue would merely shift the inconvenience to the other party." *Flood*, 94 F. Supp. 3d at 578 (internal quotation marks omitted).  In this case, however, Plaintiff purposefully availed herself of New Jersey by travelling to stay and gamble at Defendant's hotel and casino in Atlantic City.  What is more, she has done so consistently for the past "eighteen or twenty years."  Deft. 56.1 Stmt. ¶ 14.  And while Plaintiff may claim that travel to the District of New Jersey would be difficult given that she "does not own a car," Opposition at 6, the Court finds any suggestion of financial hardship unconvincing since Plaintiff has been able to recycle sizable amounts of money at Defendant's casino.  Deft. 56.1 Stmt. ¶ 16; Pl. 56.1 Stmt. ¶ 16; Motion at 6.[4]  Defendant has therefore demonstrated that Plaintiff would not be substantially inconvenienced by a transfer, and so this factor favors transfer.  *See W.P.V.*, 2023 WL 1991426, at \*5 (holding the convenience-of-the-parties factor favors transfer where the critical events giving rise to the plaintiffs' claims occurred in the transferee district and when "transfer would not cause substantial inconvenience to either Plaintiff").

---

[4] As noted, the record is somewhat ambiguous as to whether Plaintiff was required to gamble $750,000 or $150,000 per year to secure her Seven Star status. *See supra* note 2.  Either way, suffice it to say, Plaintiff had the means to gamble large amounts of money.

### C.   Location of Relevant Documents

"[C]ourts have recognized that the location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents . . . ." *Monfried v. Sigma Fin. Corp.*, No. 15 Civ. 2806 (VSB), 2016 WL 9724977, at *4 (S.D.N.Y. June 14, 2016) (internal quotation marks, brackets, and citations omitted)); *Barry v. United States*, No. 21 Civ. 7684 (BCM), 2022 WL 4467504, at *6 (S.D.N.Y. Sept. 26, 2022).  Neither party has pointed to any specific document or piece of evidence in either the Southern District of New York or the District of New Jersey.  This factor is therefore neutral.  *See W.P.V.*, 2023 WL 1991426, at *5.

### D.   Locus of Operative Facts

"The location of the operative events is a primary factor in determining a § 1404(a) motion to transfer," *Alpha Indus., Inc. v. Alpha Clothing Co.*, No. 21 Civ. 87 (KPF), 2021 WL 2688722, at *6 (S.D.N.Y. June 30, 2021) (internal quotation marks omitted), because "transfer to a district where the key operative events occurred serves the interests of justice," *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 745 (S.D.N.Y. 2013) (internal quotation marks omitted).  "To determine where the locus of operative facts lies, courts look to the site of events from which the claim arises." *Guccione v. Harrah's Mktg. Servs. Corp.*, No. 06 Civ. 4361 (PKL), 2009 WL 2337995, at *8 (S.D.N.Y. July 29, 2009) (internal quotation marks omitted).

Here, the facts giving rise to Plaintiff's claims all occurred in New Jersey.  Plaintiff chose to stay at Defendant's hotel, located in New Jersey, in order to gamble at Defendant's casino, also located in New Jersey.  Deft. 56.1 Stmt. ¶¶ 13-17.  Defendant awarded Plaintiff with Seven Star status which resulted in her receiving, among other things, a complimentary suite in the hotel's Ocean Tower complex.  *Id.* ¶ 16; Motion at 6.  While using that complimentary suite, Plaintiff

wore the complimentary slippers that were provided by Defendant.  Deft. 56.1 Stmt. ¶¶ 19-21.
And most significantly, Plaintiff fell while in her suite because, she alleges, those slippers were
too large.  *Id.* ¶¶ 22-25.  From all this, Plaintiff alleges that Defendant breached a duty of care by
failing to provide her with appropriately sized slippers and by failing to warn her of the danger
inherent in wearing the oversized slippers.   First Am. Compl. ¶ 27.  Thus, "all of the legally
operative events" in this case took place in the District of New Jersey.  *Jones v. United States*, No.
02 Civ. 1017 (JG), 2002 WL 2003191, at *3 (E.D.N.Y. Aug. 26, 2002); *see also W.P.V.*, 2023 WL
1991426, at *5-6.

Plaintiff argues that "[t]he locus of the operative facts does not favor either New York or
New Jersey as the accident occurred in New Jersey but the care and treatment were rendered in
New York."  Opposition at 7.  Not so.  Plaintiff neglects that she also received medical treatment
just hours after her fall in the District of New Jersey—at a hospital located one block from the
hotel.  Deft. 56.1 Stmt. ¶ 34.  And more fundamentally, "[a]lthough Plaintiff has received medical
treatment in this District, the 'acts or omissions for which Defendants could be held liable
occurred' in New Jersey."  *Burgos*, 2017 WL 2799172, at *2 (quoting *Solar v. Annetts*, 707 F.
Supp. 2d 437, 442 (S.D.N.Y. 2010)).  The locus of all operative facts is therefore New Jersey, and
so this factor strongly favors transfer.

### E.      Availability of Process to Compel Attendance of Unwilling Witnesses

This factor "requires a consideration of the court's power to compel attendance of
unwilling witnesses, as a district court only can subpoena witnesses within the district or within
100 miles of the [court]."  *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 375
(S.D.N.Y. 2006); *accord* Fed. R. Civ. P. 45(c)(1) ("A subpoena may command a person to attend
a trial, hearing, or deposition only . . . (A) within 100 miles of where the person resides, is

employed, or regularly transacts business in person . . . .").  However, this factor is "generally relevant only with respect to third-party witnesses, because employee witnesses are subject to compulsory process in either forum by virtue of their employment relationship with a party." *Ruiz*, 2014 WL 4662241, at *11 (internal quotation marks omitted).

Here, neither party has submitted affidavits or other evidence suggesting that any prospective non-party witnesses would decline to voluntarily appear in either district.  *See W.P.V.*, 2023 WL 1991426, at *6 (collecting cases).  And even if there were, it is possible that some of the witnesses may be located within 100 miles of both this Court and a courthouse in the District of New Jersey.  *Cf. Schwartz*, 186 F. Supp. 2d at 251 (taking judicial notice of the close proximity between the Eastern District of New York and the District of New Jersey and reasoning "it is quite likely that [potential third-party witnesses] live within 100 miles of this Court" and thus are "amenable to the subpoena power of this Court").  Accordingly, this factor is neutral.

## F.    Relative Means of the Parties

"Where a disparity exists between the means of the parties, a court may consider the relative means of the parties in determining venue."  *Aerotel, Ltd.*, 100 F. Supp. 2d at 197. However, "a party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances."  *It's a 10, Inc. v. PH Beauty Labs, Inc.*, 718 F. Supp. 2d 332, 338 (S.D.N.Y. 2010) (internal quotation marks and brackets omitted).

Normally, "the relative means of an individual plaintiff in contrast to a large company clearly favors plaintiff" in the transfer analysis.  *Scherillo*, 684 F. Supp. 2d at 329; *see also Schwartz*, 186 F. Supp. 2d at 251 (similar).  In this case, however, the Court finds several factors weighing against such a presumption.  First and most significantly, Plaintiff does not dispute that

she and her witnesses "have the financial means to travel to New Jersey." Opposition at 6. And for good reason: Plaintiff has been travelling to Atlantic City to stay at Caesars "for the past eighteen or twenty years," and has gambled a massive amount of money at the casino. Deft. 56.1 Stmt. ¶¶ 14, 16; Pl. 56.1 Stmt. ¶ 16; Motion at 6. Second, the argument against transfer is mitigated by the fact that the federal courthouse in Camden, New Jersey, is approximately 80 miles from this Court, thus imposing a relatively minimal increase in cost to Plaintiff.[5] *See Schwartz*, 186 F. Supp. 2d at 251. Third, "the most significant drain on plaintiff's time at [this] stage of the case would likely be the hours spent preparing for, testifying at, and attending the trial itself – not the travel hours." *Barry*, 2022 WL 4467504, at *6. This factor is therefore neutral.

## G.    Forum's Familiarity with the Governing Law

Federal courts sitting in diversity apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under New York choice of law rules "the law of the jurisdiction having the greatest interest in the litigation will be applied." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012) (internal quotation marks and brackets omitted). In this case, New Jersey has the greatest (if not the only) interest in this case, since the "actual tortious conduct" allegedly occurred entirely within New Jersey, and so New Jersey law most likely would apply if the case were to be decided in the Southern District of New York. *Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 400 (S.D.N.Y. 2018); *see Licci*, 672 F.3d at 158; *Longo v. Wal-Mart Stores, Inc.*, 79 F. Supp. 2d 169, 173 (E.D.N.Y. 1999) ("This case concerns allegations of negligence against the Defendant. Thus, the

---

[5] This is assuming that the case is transferred to a judge sitting in the Mitchell H. Cohen Building and U.S. Courthouse in Camden. If the transferred case were to be heard in the federal courthouse in Trenton or Newark, the distance would be even less.

case is governed by the substantive law of the state in which the acts or omissions took place . . . .").

"While this Court is of course capable of applying [New Jersey] law, nonetheless, this factor weighs slightly in favor of transfer as the [District of New Jersey] would be more familiar with local law and potentially, for that reason, more efficient." *W.P.V.*, 2023 WL 1991426, at *7 (internal quotation marks and brackets omitted); *see Barry*, 2022 WL 4467504, at *7 (similar); *Jones*, 2002 WL 2003191, at *4 ("A federal district court sitting in Georgia would certainly be more familiar with Georgia law than a district court sitting in New York."). This factor favors transfer.

## H.     Weight Accorded to Plaintiff's Choice of Forum

Plaintiff is correct that her "choice of forum is generally entitled to deference." *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006); *see* Opposition at 8. That deference, however "'is significantly diminished' where, as here, 'the operative facts have no connection to the chosen district.'" *Larca v. United States*, No. 11 Civ. 3952 (JMF), 2012 WL 6720910, at *3 (S.D.N.Y. Dec. 16, 2012) (quoting *Carder v. D & D Jewelry Imports*, 510 F. Supp. 2d 344, 346 (S.D.N.Y. 2007)); *see also W.P.V.*, 2023 WL 1991426, at *7. Moreover, "many courts accord this factor less weight in the transfer context than in a *forum non conveniens* motion, since a transfer motion does not seek dismissal of the complaint." *Jones*, 2002 WL 2003191, at *3. Thus, "district courts should locate the degree of deference to be afforded a plaintiff's forum choice on a sliding scale." *Maverick Fund, L.D.C. v. Lender Processing Servs., Inc.*, No. 13 Civ. 5474 (DLC), 2013 WL 6467889, at *2 (S.D.N.Y. Dec. 10, 2013) (internal quotation marks omitted).

Here, the factors warranting transfer to the District of New Jersey are extremely compelling. Most significantly, the case involves allegedly tortious acts or omissions that occurred

exclusively in New Jersey, and New Jersey law will almost certainly apply to Plaintiff's claims. Moreover, Plaintiff has, for years (even decades), availed herself of New Jersey by travelling there to gamble at Defendant's casino, and has demonstrated her financial means by gambling large amounts of money at the casino. Accordingly, the Court finds that Plaintiff's choice of forum is entitled to diminished weight. *See W.P.V.*, 2023 WL 1991426, at *7.

## I.      Trial Efficiency and the Interests of Justice

To be sure, this case is not in its early stages. Discovery has been completed, and Defendant has already moved for summary judgment. Dkts. 50, 56-59. But apart from deciding this motion, the Court has yet to engage with the facts or legal issues in this case. This case was originally assigned to Judge Gardephe and was transferred to the undersigned six months after it was removed from state court. Moreover, most of the litigation thus far has been overseen by Judge Cave under the scope of the general pretrial supervision referral. Dkt. 6. In fact, the undersigned has only interacted with the parties at a single conference on January 31, 2022. *See* Jan. 31, 2022 Minute Entry; Dkt. 75. With discovery now complete, the remaining litigation primarily entails resolving Defendant's summary judgment motion and, if appropriate, the trial. Accordingly, trial efficiency will not be greatly impacted by transfer.

As for the interests of justice, New Jersey is the proper forum to hear this case. The only connection between New York and the incident at issue is that Plaintiff resides in Manhattan. While Defendant has not moved to dismiss for lack of personal jurisdiction, it is not clear to the Court that personal jurisdiction even exists over Defendant. Accordingly, the interests of justice strongly favor transfer.

* * *

15

In sum, all of the factors either favor transfer or are neutral, with one of the primary factors—the locus of operative facts—strongly favoring transfer and with Plaintiff's choice of forum entitled to diminished deference.  As such, the Court finds that transfer to the District of New Jersey is appropriate.

## IV.  Conclusion

For the foregoing reasons, Defendant's motion to transfer this case to the District of New Jersey is granted.  Because this case should be heard in another district, the Court does not reach the merits of Defendant's summary judgment motion, Dkt. 56, and denies that motion without prejudice to refiling it in the District of New Jersey in accordance with the rules of the judge to whom the case is assigned.  The Clerk of Court is respectfully directed to close Docket Numbers 56 and 69, and to transfer this case to the District of New Jersey.

SO ORDERED.

Dated: February 22, 2023
      New York, New York

                                      JOHN P. CRONAN
                            United States District Judge